# S. 421, A Bill to Require the Comptroller General to Ascertain Increases in the Cost of Major Acquisition Programs of Civilian Agencies and to Limit the Expenditure of Federal Funds to Carry Out Those Programs

Proposed legislation, if construed to give the Comptroller General, a legislative officer, discretionary authority to review Executive Branch acquisition programs and to cut off funds to those programs, would violate the constitutional principle of the separation of powers.

September 23, 1983

MEMORANDUM OPINION FOR THE ASSISTANT ATTORNEY GENERAL, OFFICE OF LEGISLATIVE AFFAIRS

This responds to your request for the comments of this Office on S. 421, which establishes a procedure for reporting cost overruns on major civil acquisition programs and requires a cutoff of government funding whenever an overrun exceeds 25 percent of the initial cost estimate. Section 2(a) of the bill states:

> The Comptroller General shall be responsible for ascertaining increases in the cost of each major civil acquisition program and compiling statistics on such increases. Such statistics shall be compiled from data submitted to the Comptroller General under section 3 and from data collected by the Comptroller General in the process of carrying out audits and reviews authorized by law.

Section 3 of the bill authorizes the Comptroller General to require submission of reports on major civil acquisition programs carried out by various government agencies.[1] The reports to the Comptroller General must include a description of the acquisition program, the initial cost estimate for the program, estimated total cost of the program as of the date of the report, the total amount of funds authorized, appropriated, and obligated, the estimated date of completion, reasons for any delay in completion, changes in the quantity or size of the acquisition program, the reasons for any actual or projected increase in the total

---

[1] The term "major civil acquisition program" is defined by the bill as any construction, acquisition or procurement program (not involving the Department of Defense) that is financed entirely with federal funds and is estimated to require an eventual total expenditure exceeding $50,000,000.

cost by more than 25 percent over the initial cost estimate, and actions proposed to control subsequent increases in costs. Section 4 requires that when the Comptroller General determines that the actual or estimated cost of a program exceeds the initial cost estimate by 25 percent or more, the Comptroller General shall transmit notice of this determination to the head of the agency involved and to Congress. No funds may be obligated or expended on the program after the date on which the agency receives such notice unless Congress passes a law that provides for authority to obligate and expend funds.

In our view, this procedure, as currently described by the bill, raises significant constitutional questions. In particular, the bill would be a serious breach of the separation of powers if construed to give the Comptroller General discretionary authority to review Executive Branch programs and, based upon his own independent determination, cut off funds to those programs. The President has sole constitutional responsibility for executing the laws adopted by Congress. Article II of the Constitution states in part that "the Executive Power shall be vested" in the President and that the President "shall take Care that the Laws be faithfully executed." By virtue of these provisions, all executive functions must be placed within the Executive Branch under the control and direction of the President. *Humphrey's Executor* v. *United States,* 295 U.S. 602 (1935); *Myers* v. *United States,* 272 U.S. 52 (1926). Congress may not vest itself or its appointees with executive powers. *Buckley* v. *Valeo,* 424 U.S. 1 (1976).

This fundamental principle of constitutional law would be breached if the Comptroller General were granted executive authority. The Comptroller General is not an Executive Branch official subject to Presidential control; rather, the Comptroller General acts as an advisory arm of Congress. The General Accounting Office is by statute made "independent of the executive departments," 31 U.S.C. § 702(a), and Congress has proclaimed that the Comptroller General and the GAO are "part of the legislative branch of the Government." Reorganization Act of 1949, 63 Stat. 205; Reorganization Act of 1945, 59 Stat. 616; *see also* United States Government Manual 1982/83, at 40; Corwin, *Tenure of Office and the Removal Power,* 27 Colum. L. Rev. 354, 396 (1927). Therefore, under the above principles, Congress may vest the Comptroller General with authority to assist it in its lawmaking responsibilities, but it may not grant to the Comptroller General executive authority which is not subject to the control of the President. The Department of Justice has previously taken the position before Congress that "as a general principle of constitutional law the Congress may not vest in its agent, the Comptroller General, the Executive function of enforcing the law." *Hearings before a Subcomm. of the House Comm. on Government Operations on H.R. 12171,* 95th Cong., 2d Sess. 72 (1978) (testimony of Lawrence A. Hammond, Deputy Assistant Attorney General, Office of Legal Counsel).

Vesting independent authority in the Comptroller General to require a cutoff of federal funding for acquisition programs would clearly constitute an attempt to lodge executive authority in an arm of Congress. Reviewing the progress of Executive Branch programs, making a judgment based upon standards estab-

lished by Congress, and taking an action that purports to have binding legal effect on whether those programs may continue is unquestionably an exercise of executive authority. It would involve the Comptroller General deeply in the administration of the Executive Branch and give him substantial authority over the execution of the law. Therefore, such a procedure would breach the constitutionally required separation of powers. In short, Congress can no more vest this authority in the Comptroller General than Congress could vest it in its own committees. *See* 41 Op. Att'y Gen. 230 (1955); 37 Op. Att'y Gen. 56 (1933); cf. *INS* v. *Chadha,* 462 U.S. 919 (1983).*

This does not mean, of course, that Congress may not by law regulate procurement by the Executive Branch. For example, Congress certainly could require that an agency cease spending on an acquisition program if the agency determined that expenditures would exceed the initial estimate by 25 percent. The problem in this case is not the particular requirement that Congress wishes to impose, but rather the mechanism for enforcing that requirement. The requirement is within Congress' power to impose, but its execution must remain within the Executive Branch under the control of the President.

Therefore, if the statute were adopted as now drafted this Office would construe the statute, in order to be consistent with the Constitution, as giving the Comptroller General only a ministerial role in transmitting to Congress determinations made by executive agencies. Thus, funding could be cut off only if an executive agency determined in its report that expenditures would exceed the initial estimate by 25 percent or more. The Comptroller General would have no independent authority to make such a binding determination and would simply be required to transmit the agency's report to Congress.

However, if Congress wishes to proceed with this legislation, we urge that it be amended to make it clear that the Comptroller General's role is purely ministerial and that the determinative reports will be made by the executive agencies involved. In particular, § 2 of the bill should be deleted and the bill should explicitly describe the timing and content of the reports required to be filed by the executive agencies. This Office objects to the bill unless it is amended to make this point clear.

LARRY L. SIMMS
*Deputy Assistant Attorney General*
*Office of Legal Counsel*

---

* NOTE: Subsequent to the issuance of this Office of Legal Counsel opinion, the Supreme Court determined in *Bowsher* v. *Synar,* 478 U.S. 714, 732–33 (1986), that the Comptroller General is an agent of Congress, and therefore cannot be vested with functions that "plainly entail[] execution of the law in constitutional terms."